**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Timothy Hall (K-57675), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20 C 1719 |
| v. ) | |
| ) | Hon. Elaine E. Bucklo |
| Warden Nicholson, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Timothy Hall ("Plaintiff"), an Illinois prisoner, brought this action under 42 U.S.C. § 1983 concerning the conditions under which he was imprisoned at Stateville Correctional Center. By order dated May 1, 2020, the Court allowed Plaintiff's amended complaint to proceed against Stateville Warden Nicholson ("Defendant") because the amended complaint alleged potentially systemic problems at the prison. Before the Court is Defendant's motion for summary judgment. For the reasons discussed below, Defendant's motion is denied.

**I.     Background**

**A.     Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Rule 56.1 requires the party moving for summary judgment to provide a statement of material facts and a supporting memorandum of law. LR 56.1(a)(1), (2) (N.D. Ill.) (amd. Feb. 18, 2021). The statement of material facts "must consist of concise numbered paragraphs[,]" and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(d)(1), (2). When addressing facts in its memorandum of law, the moving party "must cite directly to specific paragraphs in the LR 56.1 statements or responses." LR 56.1(g).

The party opposing summary judgment must submit a supporting memorandum of law and a response to the moving party's statement of facts. LR 56.1(b)(1), (2). A fact may be admitted, disputed, or admitted in part and disputed in part. LR 56.1(e)(2). To dispute an asserted fact, the opposing party "must cite specific evidentiary material that controverts the fact" and explain "how the cited material controverts the asserted fact." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate[.]" *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3).

Defendant filed a motion for summary judgment, Dkt. 61, a memorandum in support, Dkt. 63 ("DMEM"), and a statement of facts, Dkt. 62 ("DSOF"). Each asserted material fact is

supported by citations to evidentiary material. Because Plaintiff is proceeding *pro se*, Defendant also served on Plaintiff a Local Rule 56.2 Notice that explained the requirements of Local Rule 56.1. Dkt. 64. Plaintiff filed a response that consists of both a recitation of facts and legal arguments, Dkt. 67 ("PRESP").

Plaintiff did not directly respond to Defendant's statement of facts, so as permitted by Local Rule 56.1(e)(3), the Court will consider facts therein admitted if they are not "controverted with specific citations to evidentiary material." Notwithstanding any admissions, however, the Court has interpreted Plaintiff's responsive filing generously, consistent with his *pro se* status, and will consider his recitation of facts to the extent that he has either pointed to evidence in the record or could properly testify himself about the matters asserted. *See James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(4)); *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602. Moreover, application of Local Rule 56.1 here aside, Defendant relies entirely upon Plaintiff's own deposition testimony and grievances as evidence of the prison's conditions – Defendant has submitted *no* additional evidence on that issue – and thus the factual record as to prison conditions consists of Plaintiff's own account and is undisputed in any event. *See Bentz v. Hardy*, No. 15-1344, 638 Fed. App'x 535, 536 (7th Cir. Apr. 8, 2016) (finding that, even where plaintiff failed to respond properly to statement of uncontested facts, "[t]hat misstep was not fatal" because defendants chiefly relied upon plaintiff's discovery deposition as their evidentiary source, rendering his account of prison conditions undisputed).

With these standards in mind, the Court turns to the relevant facts and will incorporate references to the parties' exhibits so long as they would be admissible at trial and provide information relevant to the Court's analysis.

**B. Facts**

This lawsuit concerns Plaintiff's incarceration at Stateville from 2014 – 2018 (he was then transferred to Pinckneyville Correctional Center, where he is presently incarcerated). During that time, Plaintiff states that he was housed in D-House, C-House, and F-House – and he has identified specific cells where he resided in each, *see* PRESP at p. 2, 11 – whereas Defendant asserts that Plaintiff resided only in D-House during this time, based upon a "Counseling Summary" log for Plaintiff that Defendant produced, *see* DSOF ¶ 9.

Plaintiff held numerous prison jobs at Stateville. He worked on the paint crew between 2015 and 2017, worked as cell-house help, which consisted of cleaning living units, and he did two rotations of six-month stints each in the toxic room, where he cleaned tunnels, the dining room, and visiting room, and then in the laundry room, where he washed clothes for the facility, including jumpsuits from the healthcare unit. *Id.* ¶¶ 10-15.

All three cell houses where Plaintiff lived were "plagued" by cockroaches, rats, rodent droppings, mold, foul odors, asbestos, fecal matter on the walls, and poor ventilation. PRESP at 2. The conditions in F-House were "so grim" that it closed in 2016. *Id.* Plaintiff "suffered there" until just before it closed. *Id.* While Plaintiff slept, roaches and rodents crawled on him,

causing him to awaken. *Id.* His food trays were wiped down with dirty towels instead of washed in a dish washer. *Id.* The dining tables were covered in bird feces. *Id.* While he showered, he inhaled mold. *Id.* When he worked in the toxic room, he was exposed to toxic chemicals for six to seven hours a day. *Id.* When he worked in the general store, he worked within muddy walls and among mice that were in the prison's food supply. *Id.*

Plaintiff's medical records from during 2014-2018 reflect multiple complaints by Plaintiff of itching on his back, scratchy throat, chronic congestion, nasal pain, and facial pressure. *Id.*, pg. 3. The medical records also reflect observation of puss-filled vesicles on Plaintiff's back and fungus on his body. *Id.* Administrative staff "simply reminded [Plaintiff] of the status quo and instructed him to put in sick call to address his ailments". *Id.*

Plaintiff filed two grievances, each both related to sanitation and his resulting medical issues, during his time at Stateville – one in October 2014 and one in June 2018. DSOF ¶¶ 21-38. The 2014 grievance identified problems with ants, roaches, spiders, mice, and bird droppings throughout the prison. *Id.* ¶ 22. Plaintiff also complained that he was having respiratory problems, sleepless nights, headaches, congestion, mucus build-up, and a raspy voice. *Id.* ¶ 23. In the 2018 grievance, Plaintiff complained about mold, asbestos, birds, bird feces, roaches, and a lack of a dishwasher. *Id.* ¶ 32. He further complained about respiratory problems, blurred vision, chronic itching, a raspy voice, and mucus build-up. *Id.* ¶ 34. Plaintiff noted in both grievances that he was receiving medical attention, but that it was not helping. *Id.* ¶¶ 25, 35. In the latter grievance he requested treatment from a specialist regarding the rash on his back. *Id.* ¶ 37. Neither grievance identified nor was directed towards any particular staff members. *Id.* ¶¶ 29, 38. Plaintiff also wrote three additional letters regarding his complaints. PRESP at 2.

In response to Plaintiff's first grievance, the counselor wrote, "glue traps are provided for mice", and the prison makes every effort to keep wildlife out, but "when wildlife enters the living units staff notifies the appropriate department". *Id.* at 3. There are no documented efforts in the record to move Plaintiff to a more sanitary environment. *Id.* The medical records reflect some treatment of Plaintiff's symptoms, but no attempts to address their causes or reduce the risk of future harm. *Id.*

Plaintiff also had verbal conversations with prison staff about the unsanitary conditions, but those conversations were not with Defendant. *Id.*, pg. 2; DSOF ¶ 19. Plaintiff only ever exchanged "passing greetings" with Defendant. *Id.*

Defendant was "not the Warden at Stateville for the entire period relevant to Plaintiff's allegations", but he was the Warden when Plaintiff was transferred to Pinckneyville in 2018. *Id.* ¶¶ 17-18. Plaintiff notes that Defendant was a warden at Stateville at the time that F-House was closed, which occurred in 2016. PRESP at 5.

At the time of Plaintiff's deposition in February 2021, Plaintiff's breathing had improved, but he was still congested, having trouble swallowing, and he still had the rash on his back. DSOF ¶ 40.

3

Plaintiff filed this lawsuit in March 2020. In May 2020, the Court allowed Plaintiff to proceed on his amended complaint, explaining that his allegations of four-years long constant exposure to pests, feces, and mold in his cells, remainder of his living units, the dining hall, and the prison's kitchen areas, which caused him to suffer respiratory and skin conditions that have not abated, potentially indicated unsanitary conditions of constitutional significance and warranted further inquiry. Dkt. 10. The Court explained that Plaintiff could proceed against Defendant in his individual capacity because the personal involvement of a senior prison official like a warden can be inferred when, as here, a prisoner-plaintiff alleges facts sufficient to raise an inference that conditions are potentially systemic, rather than localized to a particular area of a prison. *See Smith v. Dart*, 803 F.3d 304, 309 n. 2 (7th Cir. 2015). *Id.*

Defendant now moves for summary judgment in his favor and against Plaintiff.

## II. Discussion

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *Farmer v. Brennan*, 511 U.S. 832, 834 (1994). To establish a constitutional violation with respect to a prisoner's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendant acted with deliberate indifference to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). Life's necessities include shelter, heat, clothing, sanitation, and hygiene items. *See Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). A deprivation must be sufficiently serious; that is, the condition must create a serious risk to an inmate's health or safety or be sufficiently prolonged so as to cause significant pain or discomfort. When assessing the objective severity of conditions of confinement, the Court must consider their nature, duration, and any harm caused by the conditions. *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012). Certain conditions may establish an Eighth Amendment violation in combination when they would not do so alone. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). And some conditions, if endured for a significant period of time, may be sufficient to implicate the Constitution where a short-term problem might not be. *Gray*, 826 F.3d at 1005.

Here Defendant introduced no evidence whatsoever contradicting Plaintiff's description of Stateville's unsanitary conditions. His **undisputed** account of rampant pest activity throughout

the prison, coupled with his exposure to toxins and moldy and filthy showers, walls, dining tables, and trays – which all resulted in him developing persistent respiratory and skin conditions — is sufficient to create a disputed issue of fact as to whether his living conditions were constitutionally deficient. *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) ("[A] prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation."); *Board v. Farnham,* 394 F.3d 469, 485–86 (7th Cir. 2005) (finding that mold and black fiberglass in air vents resulting in respiratory problems and nosebleeds sufficiently serious); *Gray*, 826 F.3d at 1006 (concluding that insect infestation together with lack of cleaning supplies and broken window in cell could constitute unconstitutional condition of confinement); *Barbosa v. McCann*, No. 08 C 5012, 2011 WL 4062469 at *6 (N.D. Ill. Sept. 12, 2011) (finding that record evidence indicated inmate could prove insects and cockroaches were "rampant," there were so many that he could sleep only a few hours a night, and bugs or mice crawled on him and bit him); *Villagran v. Dart*, 2016 WL 7426132, at *4 (N.D. Ill. Dec. 23, 2016) (finding that inmate's observation of five to ten mice a night in dayroom, mice droppings in cell and showers, insects in cell and showers, mold in dayroom and showers, leaky cell toilet, and access to disinfectant only "once in a while" created disputed issue of fact whether inmate's confinement rose to level of constitutional violation); *Moran v. Rogers*, 2007 WL 1232216, at *2 (N.D. Ind. April 24, 2007) (exposure to excessive mold that caused breathing problems beyond a mild allergic reaction stated a claim); *Thomas*, 697 F.3d at 614 ("The potential psychological harm from living in a small cell infested with mice and cockroaches is pretty obvious."). Although Defendant cites to caselaw which explains that a mere laundry-list of unsanitary conditions does not alone state a claim, these cases and Defendant do not engage with Plaintiff's testimony – or the emphasis of the Court's screening order – that the conditions here were pervasive and and led to documented and long-lasting health problems including skin rashes and fungus, itching, and persistent congestion and breathing difficulties.

Defendant's motion is more focused on the subjective element of Plaintiff's claim. Defendant is correct that Plaintiff has not produced direct evidence showing that Defendant knew about the severity of the conditions Plaintiff experienced. It is unclear to whom Plaintiff's three letters were addressed or if Defendant ever saw them, and the two had no verbal conversations. Defendant likewise was not a signatory to any of Plaintiff's grievance responses. Nevertheless, the Court must construe the facts in a light most favorable to the non-movant, *see Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014) and "[e]vidence that a senior official 'must have known' about the risk of physical or psychological harm resulting from the unsanitary conditions is sufficient for a jury to find deliberate indifference." *Gray*, 826 F.3d at 1008. Here, the unsanitary conditions described by Plaintiff were pervasive and occurred in more than one housing unit – even causing one such unit, F-House, to close altogether – and thus suggest systemic problems at the prison, and so Defendant's knowledge of the problems may be inferred. *See id.* at 1008-09 (citing *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) ("defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions" such as "inadequate hygiene")). Defendant makes much ado about the fact that he was not the Warden during "the entire" time Plaintiff resided at Stateville, but, troublingly, Defendant has not provided the Court with the date that his employment at Stateville began. Plaintiff's account that Defendant was a warden at least as far back as 2016,

5

when F-House closed, is undisputed. Overall, Plaintiff has identified sufficient evidence of systemic conditions during Defendant's tenure so that he may proceed against Defendant in his individual capacity. *See Sanders*, 198 F.3d at 629 (inferring that personal liability may be established against senior jail official when complained-of condition exists in multiple units of the jail).

Lastly, the prison's attempt to trap mice or to notify appropriate officials when other wildlife enter the prison is some evidence that the prison was not deliberately indifferent to the conditions, but it is not enough at this juncture to establish a lack of deliberate indifference. *See Gray*, 826 F.3d at 1009; *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (explaining that extermination twice in sixteen months does not, by itself, negate a showing of deliberate indifference); *Bentz*, 638 F. App'x at 537-38 (concluding that evidence of monthly spraying for pests did not exculpate defendants because an ineffective method of pest control may be evidence of deliberate indifference).

Accordingly, for all the foregoing reasons, Defendant is not entitled to summary judgment.

### III. Conclusion

Defendant Nicholson's motion for summary judgment [61] is denied.

Date: February 10, 2022

ENTER:

*Elaine E. Bucklo*

Judge Elaine E. Bucklo
United States District Court
Northern District of Illinois